White, J.
The lands described in the second cause of action were acquired by Thomas Hunt by purchase. On his death, these *334 lands descended to his surviving wife, Joanna, in foe; and the principal question for determination in the case is, whether, on her decease, the lands descended to the brothers and sisters of Thomas, or to the brothers and sisters of Joanna.
The ease arises under the act regulating descents, of 1853, as amended April 17, 1857 (S. & C. Stat. 501) ; and the question is to be solved by ascertaining whether the succession is regulated by the first or second section of the act.
All intestate estates are by our law divided into two classes, and the line or order of succession is to be determined by the class to which they belong. The first section creates, defines, and prescribes the course of the first class, and all estates embraced within this section have been appropriately called ancestral. All estates not included in the first class necessarily belong to the second, are non-ancestral in their character, and pass under the second section. Persons claiming as heirs to an intestate can not trace their title to the same estate partly under the first and partly under the second section.
The order of succession is the same in the descending line both as to ancestral and non-ancostrnl property. In the collateral and ascending lines it is different, and whoever is admitted to J-he succession must possess the qualifications prescribed by the statute for the line in which he claims to stand.
The distinction between 1 hese two classes of estates was *in- [384-troduced into our law by the act of February 22, 1805. 1 Chase, 515. Prior to this act, beginning with the ordinance, the principle of the civil law prevailed, and no distinction was made on account of the title by which the estate was acquired, or the ancestor from whom it was derived.
Under the act of 1805, none but the kindred of the intestate could take the estate ; and the classification of ancestral property was: “ That if the estate came by descent, devise, or deed of gift, from an ancestor,” it should descend: 1. To the children of the intestate, etc.; 2. To the brothers and sisters of the intestate of the blood of the ancestor from whom the estate came, etc.; 3. To the next of kin, to and of the blood of the intestate; and of non-ancestral property: “ That if the estate came not by descent, devise, or deed of gift, but was acquired by purchase by the intestate,” it should descend — (1) to the children of the intestate, etc.; and these failing, to his kindred in the order named.
The ancestral principle here first introduced was carried no *335 further in favor of the blood of the ancestor, than as such blood was found in the brothers and sisters of the intestate, and its only effect was to work a preference in their favor against the other brothers and sisters of the intestate.
By amendment in 1814, (2 Chase, 854,) the ancestral principle was extended as it is found in the acts of 1853 and 1857, having been carried forward in the successive revisions, with the exception of the provision, in the acts last named, as to the life estate for the husband or wife.
By the act of 1824 revising the act of 1805, provision was made for the taking of the estate by the surviving husband or wife. The words “ but was acquired by purchase by the intestate,” used in the revised act in describing non-ancestral property, were omitted; and the word “ kindred,” which had been applied in the former act to both those taking ancestral and non-ancostral estates, was retained only in connection with those taking ancestral property.
The provision for the husband or wife was contained in section seven, which provided : “ That when any person shall die intestate, or who has heretofore died intestate, leaving no one of kin of the 335] blood of such intestate, or if the kin *or heirs of the blood of such intestate be an alien or aliens, the estate o’f such intestate shall pass to and be vested in the husband or wife, relict of such intestate ;” provision being made for the alien heir to appear within a time prescribed, and prosecute his claim.
The next section provides : “ That when any person shall die intestate, having-title to any real estate in this state, and there shall be no person entitled to inherit the same by the provisions of this act, the said real estate shall escheat to and vest in the state.” The husband and wife are here ranked as persons who inherit the estate before it can escheat; and are thus, in a certain sense, constituted heirs, not in right of blood, but as persons who take the estate, in lieu of kindred, by act of law, in right of the marital relation that had existed between the suiwivor and the intestate.
The seventh section of the act of 1831 was the same as the seventh section of the act of 1824; and the eighth section of that act, like section eight of the act of 1824, provided that if there was no person entitled to inherit the estate by the previous provisions, it should escheat.
In the Lessee of Little et al. v. Lake et al. (8 Ohio, 290), the lessees of the plaintiff claimed as heirs of a widow who inherited *336 the,lands in controversy from her deceased husband, under the 7tb section of the act of 1831; and the distinction is recognized between those, under the statute, who are heirs in right of blood, and husband and wife who are. made such to each other, but not in right of blood. In commenting upon the statute it is said in the opinion that “ the only contingency upon which the widow becomes heir is mentioned in the 7th section, and is where there is no heir of the blood, of the intestate.”
The fact that the estate had been inherited by, or, which is the same thing, that it descended to the intestate, did not make it ancestral property under the act of 1824, nor the act of 1831.
The only persons who could have inherited under ihese acts, were kindred, and husband and wife. The latter, it is true, took only on failure of kindred, and if an estate thus cast upon the surviving, husband or wife, dicl not pass as non-ancestral *undcr the [336-second section, it could mot pass under the first, for want of persons-qualified to take under that section, and it would, consequently, have escheated. But where a wife inherited an estate from an in.testate husband, there was a descent from the husband, and the latter became as to the estate, in a certain sepse, the’, ancestor of the wife, but the descent was not such, nor was he such an ancestor* as was contemplated by the section of the statute which defined and. prescribed the course of ancestral property.
Thus in the ease of Lessee of Little et al. v. Lake et al.J already, referred to, the estate, which was admitted to have been inherited by the wife from the husband, was evidently regarded as passing to her kindred as non-ancestral, under the second section; and thorxgh the' estate had been inherited by her, it was not for this-reason considered as ancestral property to be controlled by the first, section as an estate as to which there was no k-indred of the husband capable of inheriting.
In ascertaining whether an estate passed under the first or under the second section, the controlling question, under the act of 1831,. was not, and is not now, whether the intestate took the estate in the capacitj of heir; but, whether the estate, if it came by descent, must not, in order to come within and pass under the first section, have come to the intestate in right of- blood?
In the act of 1853 (3 Curwen, 2270), and in the amendatory sections 1 and 2, of the act of 1857, the classification, and course of descent of ancestral and non-ancestral property, is the same as, in. *337 the act of 1831, except as to the new provisions made for the surviving husband or wife.
The provision in the seventh section of the act of 1831 in regard to aliens was omitted, and the remaining part of the section providing for husband and wife, and the eighth section providing for -escheat, were continued and made to form the third section of the .act of 1853. In this new section the husband and wife were not -ranked as heirs.
But an estate thus acquired, would, of course, descend as nonaneestral property, as it would have done under the act of 1831, 387] where the surviving husband or wife taking the ^estate under similar circumstances, was referred to as inheriting it.
The third section of the act of 1853 became inoperative and was superseded by the amendatory second section of the act of 1857, in respect to the taking of a non-aneestral estate by the surviving husband and wife. For the estate of inheritance which the survivor took, under the third section, on failure of kindred, by section two, as amended, he or she takes in preference to kindred, and next after lineal descendants.
Yiewed in the light of the former acts of which the act of 1857 is a revision, does the first section of that act embrace and regulate the, descent of an estate vested in a husband or wife under the sec- • -ond section ?
The first section provides :
“ Sec. 1. That when any person shall die intestate, having title -or right to any real estate or [of] inheritance in this state, which title shall have come to such intestate, by descent or devise, or deed ■of gift from any ancestor, such estate shall descend and pass in parcenary, to Ms or her kindred, in the following course:
“ 1. To the children of such intestate, or their legal representatives ;
“ 2. If there be no children or their legal representatives living, the estate shall pass to and vest in the husband or wife, relict of such intestate, during his or her natural life;
“ 3. If such intestate leave no husband or wife, relict of himself <or herself, or at the death of such relict, the estate shall pass to and vest in the brothers and sisters of the intestate who may be of the ¡blood of the ancestor from whom the estate. came', or their legal representatives, whether such brothers and sisters be of the whole or Shalf-blood of the intestate;
*338 “ 4. If there he no brothers and sisters of the intestate, of the blood of the ancestor from whom the estate came, or their legal representatives, and if the estate came hy deed or [of] gift from an .ancestor who may be living, the estate shall ascend to such ancestor ;
“ 5. If the ancestor from whom the estate came be deceased, the •estate shall pass to and vest in the brothers and sisters of such ancestor, *or their legal representatives ; and for want of such [338' brothers and sisters, or their legal representatives, to the brothers and sisters of the intestate, of the half-blood, or their legal representatives, though such brothers and sisters be not of the blood of the ancestor from whom the estate came;
“ 6. If there be no brothers and sisters of the intestate, or their legal representatives, the estate shall pass to the next of kin to the Intestate, of the blood of the ancestor from whom the estate came.”
This section is a transcript of the first section contained in the acts of 1831 and 1824, except as to the provision of a life estate for husband or wife. Its office is, and always has been, to define ancestral estates and to proscribe their course of descent; and in ascertaining the cases to be brought within its operation and governed by it, respect must be had to all its parts, and to the order of succession which it prescribes.
The question at issue turns on the construction of this section.
The rule to be observed in giving construction to a revising statute is thus stated in Dutoit v. Doyle, 16 Ohio St. 405 : “ The court is only warranted in holding the construction of a statute, when revised, to be changed, when the intent of the legislature to make •such change is clear, or the language used in the new act plainly requires such change of construction.”
The difficulty is found to exist in ascertaining the sense in which "the words “descent” and “ancestor” are to be understood. The sense in which these words were used in defining ancestral estates, in all the former statutes, is plain. Descent was used in its common-law sense, and by it was meant an estate which came to the intestate by law, in right of blood; and by ancestor was meant the person from whom the estate thus immediately came.
Is it clear that the sense of these words, as used in the first section, has been changed ?
It is claimed that the provision in section two, giving to the surviving husband or wife a fee, shows, by implication, that the mean *339, 340 ing has been so enlarged as to bring within the operation of the-first section an estate which has thus vested.
339] *Can the construction thus claimed be upheld consistently with the provisions of the section and the course of descents which; it prescribes ?
We think it can not, and for the following reasons :
. 1. The ancestral principle found in our former and present statutes of descent is not a preference of the blood of the ancestor to-the exclusion of the blood of the intestate, but a preference of thosoof the kindred of the intestate who are of the blood of the ancestor ; and where a preference is given to the blood of either, to the exclusion of the other, it is given to the blood of the intestate.
2. By the construction claimed, the blood of the intestate would be wholly excluded, unless in the exceptional case of a marriage between kindred; and no rule would exist for ascertaining the-kindred of the ancestor who ought to be admitted in lieu of the kindred of the intestate, except as to the brothers and sisters of such ancestor and their representatives. And if a marriage between relations by blood is to be regarded as an exception, in such ease remote kindred would be admitted who would have been excluded but for the marriage ; while kin of the intestate, in like degree, in a marriage between strangers in blood, would be excluded.
3. Every provision of the section in favor of the blood of the ancestor would be-practically inoperative in regulating the descent of an estate which had thus come to an intestate, except the one providing for the brothers and sisters of tho ancestor and their-representatives; and these failing, howsoever numerous the existing kindred of the husband or wife from whom the estate came, the estate would escheat rather than any of them should take.
4. If Thomas Hunt can be regarded as the ancestor of Joanna, within the meaning of the first section, and the estate on her death-passes as an ancestral estate to his brothers and sisters, to the exclusion of her own brothers and sisters, the same principle would make her the ancestor of the brothers and sisters of Thomas thus taking the estate, and on the death of either of them without issue, would cast his share of the estate not to his brothers and sisters, but to the brothers and sisters of Joanna. And should one 340] of them die without tissue, his share would return to thexemaining brothers and sisters of Thomas; and thus, as each died without issue, the share of the deceased would continue to alternate* *341 'from the one family to the other, until the last person seized died leaving issue, or the class of persons capable’ of taking was exhausted.
In regard to the first of the foregoing propositions, it may be further remarked that it clearly appears, from an examination of •the section, that the ancestor and the intestate contemplated by it .are to be of a common blood.
We find not only the words “his or her kindred ” used in connection with the intestate', and as descriptive, in a general sense, -of the persons provided for in the line of descent; but, on examination of the subdivisions of the section in which such persons are more particularly described, where it is not expressed, it is necessarily implied that they are of a blood common to the intestate and the ancestor. Thus, in the third clause, brothers and sisters of the intestate of the blood of the ancestor are provided for, without regard to whether they are of the whole or half-blood; and this is the only provision for brothers and sisters of the whole .blood. In the fifth clause provision is made for the brothers and sisters of the half-blood who are not of the blood of the ancestor. The necessary inference is, that the brothers and sisters of the whole blood are of the blood of the ancestor, and are provided for in the third clause.
The last clause provides for the next of kin to the intestate of the blood of the ancestor. It can have no operation until there is a failure of brothers and sisters of the intestate both of the whole .and half-blood. But the principle of a community of blood which it recognizes is doubtless that upon which the preceding clauses, as to the descent of the inheritance, is founded.
These objections to the construction claimed for the defendants in error are not mere arguments ab inconveniently but they arise out of the structure of the section as a scheme of succession, and show the scope of its legitimate operation.
The general rule to guide in the construction of statutes is thus -stated by Story, J., in Gardner v. Collins, 2 Peter, 93 : *“ What. [341 the legislative intention was, can be derived only from the words they have used, and we can not speculate beyond the reasonable -import of these words. The spirit of the act must be extz’aeted from the words of the act, and not from conjectures aliunde.”
To the same effect is the statement of the rule as found in Smith’s *342 Com. on Stat. and Const. Law, sections 714, 647, 648; Dwarris, 582, 583.
The provision for a life estate in the first section, is special in its nature, and leaves the remainder of the estate undisposed of. And whether husband and wife, for the special purpose of this provision,, are to be regarded as of kin, or whether the provision is to be considered as an exception, can make no difference. The general rule of construction in such case is, that “when a general intention is-expressed in a statute, and the act also expresses a particular intention incompatible with the general intention, the particular intention shall be considered an exception.” Sedg. on Stat. and Const. Law, 423; Smith, supra, see. 652.
The second section was intended to provide for all cases not included in the first.
The descriptive words of the section are, “ if the estate came not by descent, devise, or deed of gift;” yet they have always been regarded as embracing a devise or deed of gift from a stranger. Brewster v. Benedict, 14 Ohio, 385; Penn v. Cox, 16 Ohio, 31; Birney v. Wilson et al., 11 Ohio St. 427.
The meaning is, “if the estate came not by descent, devise, or deed of gift,” as provided in the first section.
The effect will be the same if the word ancestor is supplied; for in the sense in which the words descent, ancestor, and other words-are used in defining the class of estates that are to pass under the first section, in the same sense must they be understood when used ■ negatively in defining the class of estates to pass under the second section. If this were not so, there would be a class of estates unprovided for, and the classification would be incomplete.
In regard to the statutes of adoption passed April 29, 1854, and March 29, 1859 (S. & C. Stat. 506), it is sufficient to say that they 342] contain express provisions prescribing the course of ^descent from the adopted heir, and define his legal status to be that of a. child of the adopter.
There is no such provision regulating the descent from an intestate husband or wife. That is left to the operation of the statute-of descents alone.
Moreover, the course of descent by the first section is not to the-next of kin of the ancestor, but, after the specified classes, to the next of kin to the intestate, being of the blood of the ancestor.
Besides, if it were admissible, by mere construction, to separate *343 tbe surviving wife from her own blood, and introduce her, on the principle of adoption, into the blood of her husband, so that his-kindred by blood would become her kindred in law, it is not perceived how the persons to take under the sixth clause could be ascertained, unless her status as to the blood of the husband wore defined, so as to show in what line and degree she was to be hold as related to him by blood.
The remaining question is as to whether the lands described in-the first cause of action came to Thomas Hunt by devise from his-father.
In our opinion they did not. The title mentioned in the statute is the title under which the intestate immediately holds. The title to these lands came to Thomas by deed of conveyance from Jacob, and the character of the consideration can not alter the fact and make that a title by devise from the ancestor which was in fact a title by deed from Jacob. There was no mistake in the partition which the deeds between Jacob and Thomas were merely designed to correct. Without the conveyance from Jacob, Thomas had no title to these specific lands, legal or equitable; yet the operation of the will was the same without the deed as with it. The title of Thomas, therefore, can not be said to have come to him directly by devise from his father; and for the purposes of descent he must be regarded as a purchaser.
The judgment of the common pleas will be reversed, and, upon the facts found, judgment will be entered for the plaintiffs in error.
Day, C. J., and Brinkerhoff, Scott, and Welch, JJ., concurred.